# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

| | |
|---|---|
| **BRADLEY MARKLEY**, <br><br> Petitioner, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Respondent. | **CIVIL ACTION NO.: 3:19-CV-117** <br> **CRIMINAL ACTION NO.: 3:18-CR-21** <br> **(JUDGE GROH)** |

## REPORT AND RECOMMENDATION[1]

### I. INTRODUCTION

This case arises from Bradley Markley's ("Petitioner") pro se motion [ECF No. 31; 3:19-CV-117, ECF No. 1] to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 ("Motion"). Because Petitioner's claims are without merit, the undersigned recommends that Petitioner's Motion be denied and dismissed with prejudice.

### II. FACTUAL AND PROCEDURAL HISTORY

#### A. Petitioner's Conviction, Sentence, and Appeal

On May 16, 2017, a grand jury indicted Petitioner and charged him with distribution of heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). 3:17-CR-37, ECF No. 1. As alleged in the Indictment, Petitioner distributed a mixture and substance containing a detectable amount of heroin, fentanyl, and acetyl fentanyl to an individual that resulted in death. Id. Petitioner was initially appointed an assistant federal

---
[1] All CM/ECF references refer to Criminal Action No. 3:18-CR-21, unless otherwise noted. The related civil docket, 3:19-CV-117, was only opened for statistical purposes, and most of the related filings are docketed in the criminal case.

public defender [3:17-CR-37, ECF No. 11], but later retained Mills McDermott Criminal Law Center ("Mills McDermott") to represent him [3:17-CR-37, ECF No. 20].

After months of pre-trial motions and negotiations related to the original Indictment, Petitioner entered into a plea agreement with the Government to an Information in the instant case. ECF No. 9. The Information and the Amended Information charged Petitioner with one count of distribution of fentanyl and acetyl fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). ECF Nos. 1, 6. As part of the plea agreement, Petitioner would plead guilty to the single count contained in the Information, with a sentence of imprisonment of not less than ninety-six (96) months and not more than one hundred and eighty (180) months. ECF No. 9 at ¶¶ 1, 3. Further, the plea agreement contained an appellate waiver wherein Petitioner acknowledged that he waived his right to appeal the sentence imposed in certain circumstances. ECF No. 9. at 4, ¶ 11. In exchange, the Government agreed to dismiss the Indictment in 3:17-CR-37, where Petitioner faced a mandatory twenty (20) years of imprisonment and up to life imprisonment, if convicted. Id. at 2 –3. Petitioner and his attorney, Mr. Shawn McDermott[2], signed and dated each page of the plea agreement on March 15, 2018. Id. at 1 – 6.

On March 16, 2018, Petitioner pleaded guilty to the single-count Amended Information. ECF No. 9. The undersigned accepted the plea of guilty but deferred adjudicating Petitioner guilty and accepting the terms of the plea agreement to the sentencing court. ECF Nos. 14, 43. Further, the undersigned advised Petitioner that he waived his right to appeal under many circumstances and any appeal must be filed within fourteen (14) days of judgement. ECF No. 43 at 32:21 – 35:11.

---

[2] Petitioner was also represented by Devon Thomas Unger, another attorney at Mills McDermott, whose name also appears on the plea agreement.

2

Accordingly, on July 30, 2018, Chief United States District Judge Gina M. Groh ("Chief Judge Groh") accepted the binding plea, noting that the binding plea range is more appropriate than the Guidelines because Petitioner benefited from a lesser plea. ECF Nos. 25, 28, 44 at 12 – 14.  Subsequently, counsel advocated for Petitioner to receive a sentence at the low end of the binding plea's range, specifically ninety-six (96) months of imprisonment. Id. at 25 – 35.  Conversely, the Government requested a sentence of imprisonment between 156 to 180 months.  Id. at 36 – 38.

Chief Judge Groh sentenced Petitioner to the high end of the agreed upon range of 180 months of imprisonment and a three-year (3) term of supervised release. Id. at 38 – 39.  As agreed, the Indictment in 3:17-CR-37 was dismissed.  Id. at 43.  Further, Chief Judge Groh again advised Petitioner that he waived his right to appeal his sentence under the plea agreement, but he if believed there was a defect with the plea agreement or the sentencing proceedings, he could present his claim to the appellate court. ECF No. 44 at 43 – 44. Petitioner was also instructed that should he choose to file an appeal, he "must file a notice of appeal with the clerk of this court within 14 days following entry of the judgment and commitment order." Id. Additionally, Petitioner was informed that at Petitioner's request, the clerk of the court would file a notice of appeal on Petitioner's behalf.  Id. at 44.  Judgment was entered on August 7, 2018.  ECF No. 28.

Petitioner did not file a notice of appeal to the Court of Appeals for the Fourth Circuit, through counsel or pro se, nor did Petitioner request the clerk of the court file a notice of appeal on his behalf.

### B. Federal Habeas Relief Under 28 U.S.C. § 2255 Motion

Nearly a year after sentencing and entry of judgment, Petitioner filed his Motion on July 18, 2019. ECF No. 31. On August 5, 2019, Petitioner filed the Court-approved form. ECF No. 37. Therein, Petitioner's sole ground for relief was that he was denied effective assistance of counsel because "counsel did not file a notice of appeal even though Petitioner had appealable issues." ECF No. 37. Petitioner argues that his sentencing guidelines should have been between 21 and 27 months of imprisonment based on the charge to which he pleaded. ECF No. 31-1 at 3.[3] However, even though Petitioner claims he was dissatisfied with the outcome, counsel did not file a notice of appeal. Id. Petitioner further claims that counsel refused to file a notice of appeal. Id. at 5. For relief, Petitioner requests that this Court vacate his sentence; allow him to proceed with effective counsel; and at the least, hold an evidentiary hearing. ECF No. 37 at 14.

The Government filed a response opposing Petitioner's Motion. ECF No. 46. The Government argues that Petitioner's ineffective assistance of counsel claim is without merit. Id. Mainly, the Government avers that according to Mr. McDermott, Petitioner was advised of his appellate rights after his conviction was imposed, but Petitioner did not want to file an appeal. Id. at 2. Further, according to the Government, Mr. McDermott "has advised [ ] that he would have filed a notice of appeal" if directed to do so. Id.

In his reply, Petitioner elaborates and explains that approximately a day after his sentencing hearing, Mr. McDermott visited him in jail and did not inform Petitioner that he could appeal his sentence. ECF No. 47 at 1. However, Petitioner recalls Mr. McDermott

---

[3] Although Petitioner filed the Court-approved form on August 5, 2019, he did not file a second memorandum in support of his motion. Nonetheless, the undersigned has considered the arguments raised in the memorandum [ECF No. 31-1] filed with the original motion.

saying that Petitioner could raise an ineffective assistance of counsel claim, although it may be "a long shot." Id.

### C. Evidentiary Hearing

An evidentiary hearing was ordered [ECF No. 48][4] and occurred before the undersigned on August 24, 2020.[5] ECF No. 52. Petitioner was represented by Aaron D. Moss, AFPD, and the Government was represented by Shawn M. Adkins, AUSA. Petitioner and Mr. McDermott testified at the hearing.

Petitioner testified that he believes Mr. Mills and Mr. McDermott were both ineffective in their representation[6], although he acknowledged that Mr. Mills withdrew from representing him. ECF No. 55 at 5 – 6. Petitioner testified that Mr. Mills and Mr. McDermott presented him with the plea agreement and explained the appellate waiver. Id. at 9 - 10. Petitioner contends that he was led to believe that he would likely receive a sentence of or about ninety-six (96) months of imprisonment, but his attorneys never guaranteed that would be the sentence imposed. Id. Therefore, Petitioner was surprised when he was sentenced to 180 months of imprisonment, even though he knew that the sentence was within the binding agreed-upon range. Id. at 11 – 13. Petitioner claims that he was also surprised when Chief Judge Groh explained his appellate rights to him

---

[4] In the same order, Aaron D. Moss, AFPD, was appointed to represent Petitioner.

[5] Although the sole issue for the evidentiary hearing was whether Petitioner instructed his counsel to file an appeal. Inevitably, additional issues surrounding the plea agreement and sentence were raised during the hearing.

[6] In the indicted case, 3:17-CR-37, a motion of appearance was filed on behalf of Petitioner by Mills McDermott, PLLC, and signed by Kevin D. Mills and Shawn R. McDermott. 3:17-CR-37 at 20. Subsequently, Mr. Mills filed a motion to withdraw as counsel from that matter. 3:17-CR-37, ECF No. 80. In the case initiated by information, 3:18-CR-21, Mr. McDermott and Devon Unger of the law firm Mills McDermott PLLC filed a notice of appearance. 3:18-CR-21, ECF No. 4. Mills McDermott PLLC represented Petitioner throughout the duration of both criminal matters.

at the sentencing hearing because he "didn't think [he] had any appeal rights." Id. at 12. Petitioner reiterated that in the days following the sentencing hearing, Mr. McDermott visited him at the jail and advised that Petitioner could still pursue an ineffective-of-counsel claim. Id. at 12 – 13. Further, Petitioner asserted that he clearly asked Mr. McDermott that day to file an appeal, and Mr. McDermott responded that he could not file an appeal. Id. at 12, 14-15. Petitioner asserted that he requested his counsel file an appeal because he "got the most time possible in [the] plea." Id. at 14.

Conversely, Mr. McDermott testified that he never promised or guaranteed Petitioner a sentence of ninety-six (96) months if Petitioner signed and entered into the plea agreement. Id. at 38. Additionally, Mr. McDermott claimed that when he visited Petitioner at the jail shortly after the sentencing hearing, he explained to Petitioner his possible appellate remedies. Id. at 39. Further, Mr. McDermott stated that he informed Petitioner that the appellate waiver applied, but an appeal could still be filed, and if Petitioner wanted to appeal then he needed to inform Mills McDermott of that decision within the fourteen (14) day period so a notice of appeal could be filed. Id. According to Mr. McDermott, Petitioner advised him that he did not wish to appeal the sentence. Id. at 40.

### III. LEGAL STANDARD

A petitioner collaterally attacking his sentence or conviction bears the burden of proving: (1) that his sentence or conviction was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such a sentence; (3) that the sentence exceeded the maximum authorized by law; (4) or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. "However, if the

motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion." Beyle v. United States, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017) (citing Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970)).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test to determine whether counsel was constitutionally ineffective. Under the first prong, Petitioner must demonstrate that his counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). But, "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense assistance after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. In addition, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Id. at 689-90. There are no absolute rules for determining what performance is reasonable. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (noting counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Under the second prong, Petitioner must show that the deficient performance caused him prejudice. Strickland, 466 U.S. at 687. To show prejudice, Petitioner must show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993) (quoting Strickland, 466 U.S. at 687 (1984)). Consequently, if counsel's errors have no effect on the judgment, the conviction should not be reversed. Strickland, 466 U.S. at 691. The

Fourth Circuit has recognized that, if a defendant "cannot demonstrate the requisite prejudice, [then] a reviewing court need not consider the performance prong" and vice versa. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

The denial of counsel at a critical stage of a judicial proceeding calls for a presumption of prejudice against the defendant. United States v. Cronic, 466 U.S. 648, 659, 104 S. Ct. 2039, 2047 (1984). Further, "[t]he even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, similarly demands a presumption of prejudice." Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000).

### IV.     ANALYSIS

#### A.     Petitioner's Ineffective-Assistance-of-Counsel Claim is Without Merit Because He Cannot Satisfy the Two-Prong Strickland Standard

Petitioner alleges ineffective-assistance-of-counsel because counsel did not file a notice of appeal even though Petitioner believes that there were appealable issues. ECF No. 37 at 5.

##### 1.     Claim that counsel did not file a notice of appeal on Petitioner's behalf is without merit.

In the sole ground articulated in his motion, Petitioner claims that counsel was ineffective for not filing an appeal on Petitioner's behalf. There is a presumption that should a defendant instruct his counsel to file a notice of appeal and counsel does not, the defendant is presumed to be prejudiced by denial of a proceeding that he was entitled to. Flores-Ortega, 528 U.S. at 483.  Therefore, the assertions by the relevant parties and their credibility are important to determine what occurred and what relief should be granted.  See id. at 485 ("the question of whether a given defendant has made the requite showing will turn on the facts of a particular case").

8

The facts surrounding this claim are unclear and in dispute. In his Motion, Petitioner initially states that counsel was ineffective because counsel did not appeal the sentence, even though Petitioner felt that appealable issues existed. ECF No. 37 at 5. In his Memorandum, Petitioner states that counsel actually refused to file a notice of appeal. ECF No. 31-1 at 5. In his reply to the Government's response, Petitioner, for the first time, specifically referenced the meeting with Mr. McDermott within a few days after sentencing, at which time Mr. McDermott allegedly failed to inform Petitioner that a notice of appeal could still be filed. ECF No. 47 at 1. However, Petitioner asserted that Mr. McDermott did mention that Petitioner could pursue an ineffective assistance of counsel claim. Id. As a threshold matter, these filings are contradictory. There is a difference between a failure to inform and affirmative denial of action.

Additional contradictions followed. At the evidentiary hearing, during direct examination, Petitioner claimed that Mr. McDermott informed him that he had no appellate rights. ECF No. 55 at 12. But Petitioner later added that Petitioner informed Mr. McDermott that he wanted to file an appeal, and Mr. McDermott stated that he could not except for a claim of ineffective assistance of counsel. Id. at 12 – 15. Petitioner failed to mention this in any of his filings with the Court. Id. at 19 – 20. In contrast, Mr. McDermott testified that at the jail, he informed Petitioner that he could still file an appeal, even though the appellate waiver applied, and Petitioner would need to inform him within the 14-day time period that he wanted a notice of appeal filed. Id. at 39. However, according to Mr. McDermott, Petitioner advised that he did not wish to appeal. Id. at 40.

Although the testimony was contradictory, Petitioner provided the most clarity when directly examined by the undersigned:

9

> THE COURT: So my question is, is did he deny or did he tell you that it was a long shot as far as whether or not --
> THE DEFENDANT: He did not -- I asked --
> THE COURT: -- you could appeal?
> THE DEFENDANT: Sorry to interrupt. I asked him -- I told him that I heard Ms. Groh give me 14 days to file an appeal. That I wanted to file an appeal. He told me, no, that he could not do that because I -- in signing my plea, I signed away my rights. That's when he went on to explain to me that to get back into court, my only avenue or my Hail Mary long shot, what have you, would be the ineffective counsel.
> THE COURT: So he did explain to you that to get back into court, you'd have to file ineffective assistance of counsel claim; correct?
> THE DEFENDANT: That's correct.
> THE COURT: Did you instruct him to file that claim, sir, of any type? Did you instruct him to file any type of an appeal at that time?
> THE DEFENDANT: I didn't know I could get him to file an ineffective of counsel against himself.
> THE COURT: Did you ever write to him or ask him to file an appeal on your behalf?
> THE DEFENDANT: No because at that point, once he refused to fill out my appeal, I felt like it was kind of --
> THE COURT: All right. So you don't have a writing? You didn't contact him by telephone? You didn't e-mail him? Those are noes; correct?
> THE DEFENDANT: That's correct.
> THE COURT: Okay. Did you tell him that you wanted him to file an appeal even though he thought it might be unsuccessful either because you'd waived your rights or because he didn't believe in the grounds? Did you --
> THE DEFENDANT: He never --
> THE COURT: -- tell him to do it regardless of whether or not you had reasonable grounds or not?
> THE DEFENDANT: He never informed me that it wouldn't work or anything like that. He simply told me that I could not file an appeal because I signed my appeal rights away.
> THE COURT: All right. Thank you.

Id. at 27:11 – 28:24.

Most importantly, Petitioner contradicted himself when he stated he wanted to pursue an appeal, he told counsel this, and counsel refused. Id. at 12-13, 14-15, 27-28.

This indicates that Petitioner knew he could file a notice of appeal and counsel did not do as instructed.  But in this exchange, Petitioner claims that he did not order Mr. McDermott to file an appeal because Mr. McDermott led him to believe that an appeal could not be filed.  Petitioner cannot contend that he both knew that he could filed an appeal which his counsel refused to do, and simultaneously contend that he did not direct counsel to file an appeal because he believed he could not file an appeal .  Also, according to Petitioner, Mr. McDermott informed him that he could pursue an ineffective-assistance-of-counsel claim as part of his relief, but Petitioner never asked him to pursue the claim.  Id. Petitioner did not follow up with counsel after the meeting and ask counsel to file an appeal.  Lastly, Petitioner admitted that he never called or sent any written communication, including any letter or email, to direct counsel to file an appeal.

Alternatively, Mr. McDermott clearly testified that Petitioner never asked him to file a notice of appeal after speaking at the jail.  Id. at 39-40, 59, 63.  As evidence to support his position, Mr. McDermott produced a "close letter" dated August 29, 2018, that was sent to Petitioner.[7]  ECF No. 53-1.  In the letter, counsel memorialized the visit to the jail by stating, "At your recent jail visit with Shawn, you were fully advised of your appellant rights and you advised him you did not wish to appeal and accordingly your case file in my office has been closed."  Id.  Mr. McDermott confirmed the letter's accuracy.  ECF No. 55 at 42.  Although the letter was sent past the deadline to file a notice of appeal, there is no evidence in the record where Petitioner disputed the accuracy of this letter upon receiving it.  Moreover, the letter reinforces that Mr. McDermott did indeed inform Petitioner of his appellate rights, Petitioner decided not to seek an appeal, and Petitioner

---

[7] The letter was sent on letterhead from Mill McDermott PLLC and signed by Kevin D. Mills, Esquire.  See Footnote 6 herein.

never made any attempt to contact Mills McDermott and request that a notice of appeal be filed.

Based on the testimony of Petitioner and Mr. McDermott, the record, and the "close letter," the undersigned finds that counsel informed Petitioner of his rights and Petitioner did not ask for a notice of appeal to be filed within the 14-day period.[8] As a result, Petitioner is not presumed to be prejudiced under Flores-Ortega. Therefore, Petitioner's counsel acted reasonably as an objective attorney would under Strickland by advising Petitioner of his appellate rights, despite Petitioner having waived those rights as part of his plea, and by advising Petitioner of the potential grounds to appeal despite his waiver of appellate rights. See Strickland, 486 U.S. at 688.

Accordingly, Petitioner is not entitled to relief on his single articulated claim that he received ineffective assistance of counsel when his lawyer did not file an appeal.

However, Petitioner mentions additional grounds and grievances throughout his memorandum and at the evidentiary hearing. Petitioner appears to raise the following additional issues as to ineffective-assistance-of-counsel: Counsel was ineffective because the plea agreement fell below the objective standard of reasonableness based on the guidelines[9] and counsel's lack of effective communication as to the waiver of

---

[8] The Supreme Court of the United States noted in Flores-Ortega, 528 U.S. 470, "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." Flores-Ortega, 528 U.S. at 485 (referring to whether a defendant has made the requisite showing to support claim). While, Petitioner's expression of a desire to appeal is in dispute, the undersigned notes that there have been no nonfrivolous grounds for appeal raised by Petitioner. Petitioner consistently acknowledges that he wanted to appeal because he was sentenced at the highest end, but within, the sentencing range as stated in the plea agreement. ECF No. 31-1 at 3, 7; ECF No. 47 at 2; ECF No. 55 at 24-25. Simply, being unhappy about a sentence within the range of punishment that Petitioner agreed to is not a ground for relief. Further, Mr. McDermott testified that he would have filed a notice of appeal with an Anders brief because he did not believe there would be any meritorious issues to raise. ECF No. 55 at 39. This weighs against Petitioner.

[9] Petitioner stated that he "was sentenced to 180 months of imprisonment on July 30, 2018, and this sentence was enhanced because of its affiliation with a death. Even though the Petitioner's Guidelines

appellate rights[10] was below the standard of reasonableness. To this extent, the undersigned will address each potential ground.

### 2. Counsels' conduct in plea negotiations and the plea agreement itself do not fall below the objective standard of reasonableness.

Here, Petitioner claims that he was dissatisfied with the plea agreement, which led to his sentence of 180 months of imprisonment instead of 21 – 27 months. Petitioner was originally indicted for distribution that resulted in death. 3:17-CR-37, ECF No. 1. Because a death was alleged to have resulted from Petitioner's distribution, if convicted, Petitioner was exposed to a mandatory 20 years of imprisonment with the possibility of imprisonment for life. ECF No. 44 at 5, 10. Prior to reaching a plea agreement with the Government, counsel filed several pretrial motions to suppress evidence, all of which were denied. ECF No. 55 at 48-49. Then, counsel negotiated an agreement with the Government to limit Petitioner's exposure, where Petitioner would plead guilty to the Information and enter into a binding plea agreement for a charge of distribution, without death, and face a range of 96 to 180 of imprisonment. Id. at 33:4 – 34:19.

The maximum sentence of 15 years contained in the plea agreement is below the mandatory 20-year sentence that Petitioner faced under the Indictment, if convicted. ECF No. 44 at 5, 10. Because Petitioner's counsel negotiated a more beneficial plea for Petitioner, the undersigned finds no reason to believe counsels' conduct fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 689. Although the

---

should have been 21 – 27 months, by the preponderance of the evidence the petitioner's sentence was upwardly departed." ECF No. 31-1 at 3.

[10] Petitioner stated at the evidentiary hearing held on August 24, 2020, that despite signing the plea agreement in which he waived his appellate rights, he did not have any conversations with his counsel about his appellate rights. ECF No. 55 at 11:14 – 16. Petitioner further stated that at sentencing the only person who explained his appellate rights was Judge Groh. Id. at 12:6 – 14.

negotiated sentence was ~~a~~ higher than the Guidelines would ordinarily warrant, that higher sentence was negotiated because a lesser charge was obtained, and a mandatory 20-year sentence was avoided. ECF No. 44 at 5, 10. At sentencing, the District Court noted that "before the Court is a binding recommendation between 96 and 180 months [which] of course is well above that recommended [21 – 27 month] guideline range, but I understand the context because this is a case that was originally charged as a distribution resulting in death." Id. at 5:15 – 19. If Petitioner believes that his counsel could have negotiated a better plea, that is a tactical decision the undersigned will not second guess. Strickland, 466 U.S. at 689.

Further, Mr. McDermott testified that he went over the plea agreement during the negotiation process with Petitioner.

> MR. ADKINS: Okay. And, as you said, this contained a binding provision. Was this plea agreement then presented to Mr. Markley, and then tell me the process when it is presented to him.
> MR. MCDERMOTT: It was. I mean it was presented to him, and we would have met with him on multiple occasions to go over the plea and whether or not he wanted to take that plea or whether or not he would have wanted to insist upon his rights to go to trial and have all those rights that come with it. And I mean it was a long process with him. I mean we started those conversations while engaged in negotiations of course because we wanted to make sure that anything we were trying to negotiate, we had his approval on. So he was always part of that process, and I know we were meeting with him at the office regularly. It was both myself, Mr. Mills would have met with him, and another attorney we had there at the time, Devon Unger, would have met up with him as well. So -- I mean it was a long process going over the -- first trying to come up with, you know, in terms of negotiations, what kind of plea would he be willing to accept, and then of course going over the written plea itself on multiple occasions to make sure that he understood every single provision in that plea.

ECF No. 55 at 34:20 – 35:16.

In support, at Petitioner's plea hearing, the following exchange occurred between the undersigned and Mr. McDermott in Petitioner's presence:

> THE COURT: All right. Have you had adequate time to consider the possible sentences that may be imposed?
> MR. MCDERMOTT: Yes, Your Honor.
> THE COURT: And have you discussed all of those issues in full with Mr. Markley?
> MR. MCDERMOTT: I have as well as the other members of my firm, Your Honor.
> THE COURT: All right. Thank you.

ECF No. 43 at 10:22 – 11:4. The Court notes that Mr. McDermott is an experienced attorney in the Northern District of West Virginia who specializes in the practice of criminal law. ECF No. 55 at 30 – 32. The undersigned finds from the evidence of record that the plea agreement was explained to Petitioner prior to, and during, the plea hearing. Therefore, to the extent that this is a ground for ineffective-assistance-of-counsel, it is meritless.[11]

### 3. Assertion that counsel did not effectively explain Petitioner's appellate rights is without merit.

To the extent that Petitioner claims that he was not effectively advised of his appellate rights, that contention is contradicted by the record. Although Petitioner states the first time that he thought he maintained any right to appeal was when Chief Judge Groh informed him at his sentencing hearing, that assertion is incorrect.

First, the plea agreement document itself contains a waiver or appellate rights in paragraph 11 on page 4. ECF No. 9. Every page of the plea agreement was signed by Petitioner and his counsel and dated March 15, 2018, one day before the plea entry. Id.

---

[11] Further, the plea agreement and the binding sentencing range were explained in front of, and to, Petitioner on the record by Mr. McDermott, the Government, Chief Judge Groh, and the undersigned at both the plea hearing on March 18, 2018, and the sentencing hearing on Jul 30, 2018. Petitioner was advised that should he need to stop the proceedings and confer with counsel he had the right to do so, but Petitioner took no such action.

Thus, it is apparent that prior to plea entry that Petitioner had the plea agreement, and signed and dated each page of that document with his counsel to both obtain the benefits contained therein, and to be limited by some provisions, including paragraph 11.

Second, at the evidentiary hearing, Mr. McDermott advised that he discussed the appellate waiver and its meaning with Petitioner prior to signing the plea agreement. ECF No. 55 at 35:17 – 36:10. This is supported by the record in Petitioner's plea hearing before the undersigned on March 16, 2018. At the hearing, Petitioner stated that he understood what his plea agreement does, what it required of him and that he had no questions about the plea and confirmed his signature was present on each page of the agreement. ECF No. 43 at 19:6 – 13. Further, the following exchange occurred between the undersigned and Petitioner:

> The Court: All right, sir. Were each of the paragraphs of the plea agreement discussed with you prior to your reaching an agreement with the Government?
> The Defendant: Yes, sir.

Id. at 20:3 – 6.

Next, the undersigned clearly explained Petitioner's and appellate rights and inquired before accepting Petitioner's plea of guilty.

> THE COURT: And, Mr. Markley, do you understand that in your plea agreement, you've agreed to give up your right to appeal your sentence under many circumstances?
> THE DEFENDANT: Yes, sir.
> THE COURT: Sir, everyone found guilty of a crime in federal court in this district has the right to appeal the conviction and sentence to the Fourth Circuit Court of Appeals in Richmond, Virginia.
> THE DEFENDANT: Yes, sir.
> THE COURT: In Richmond, a three-judge panel reviews the conviction and sentence to see if it was done correctly. Do you understand that under the terms of paragraph 11A of the plea agreement that you are giving up or waiving the right to appeal

any order, the conviction, and the sentence or the manner in which that sentence was determined on any ground whatsoever, including those grounds set forth in Title 18, United States Code, Section 3742?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you only have the right to appeal your guilty plea if you believe it was unlawful or involuntary or that there was some other fundamental defect in the proceeding that was not waived in the plea agreement itself?

THE DEFENDANT: Yes, sir.

THE COURT: However, you agree that your guilty plea today is lawful and voluntary and that there have been no fundamental defects in the proceedings that you're aware of; is that correct?

THE DEFENDANT: That's correct. Yes, sir.

THE COURT: Do you also understand that everyone has the right to challenge the conviction or the sentence or the manner in which it was determined in a post-conviction proceeding, sometimes called a habeas corpus petition or collateral attack, under Title 28, United States Code, Section 2255?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that under the terms of paragraph 11B of the plea agreement that you have waived your right to challenge the conviction or the sentence or the manner in which it was determined in any post-conviction proceeding, including a habeas corpus petition or collateral attack, brought under Title 28, United States Code, Section 2255?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that your only legal remedies on appeal or collateral attack are for claims of ineffective assistance of counsel or prosecutorial misconduct?

THE DEFENDANT: Yes, sir.

THE COURT: However, you agree that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct; is that correct, sir?

THE DEFENDANT: That's correct. Yes, sir.

THE COURT: Have you discussed the waiver of these important appellate rights with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Having done so, do you still wish to waive these rights, sir?

THE DEFENDANT: Yes, sir.

> THE COURT: Mr. McDermott, do you believe that Mr. Markley fully understands the importance of the rights he is waiving, sir?
> MR. MCDERMOTT: I do, Your Honor.
> THE COURT: Thank you. Now, Mr. Markley, do you understand that should you find some basis on which to file an appeal, with few exceptions, any notice of an appeal must be filed within 14 days of judgment being entered in your case?
> THE DEFENDANT: Yes, sir.
> THE COURT: Based on your responses, sir, I find that you understand the nature of the charge and the consequences of a guilty plea to the charge.

Id. at 32:21 – 35:14.

Not only was Petitioner clearly informed of his appellate rights by the undersigned, but Petitioner stated that he had discussed his appellate rights with counsel and understood them. Id. Based on this exchange, the undersigned finds that counsel did discuss with Petitioner his appellate rights, and the Petitioner understood them. Because counsel explained these important rights, counsel did not fall below an objective standard of reasonableness in providing Petitioner information on his appellate rights.[12] Strickland, 466 U.S. at 688. Therefore, Petitioner cannot even satisfy the first prong of Strickland, and is not entitled to relief on that ground.

## V. RECOMMENDATION

For the foregoing reasons, I find that Petitioner's claims of error are without merit. Accordingly, I **RECOMMEND** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action No. 3:19-CV-117, ECF Nos. 1, 3; Criminal Action No. 3:18-CR-21, ECF Nos. 31, 37] be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[12] Also, Petitioner and Mr. McDermott discussed Petitioner's appellate rights shortly after sentencing, although it is disputed exactly what was said.

18

The Petitioner shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to Chief United States District Judge Gina M. Groh. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

DATED:     March 2, 2021

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE